NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WALTHER M. RIVERA, | |
| Plaintiff, | Civ. No. 13-3024 (KM) (MAH) |
| v. | |
| SERGEANT C. ZWEIGLE, | OPINION |
| Defendant. | |

**KEVIN MCNULTY, U.S.D.J.**

The plaintiff, Walther M. Rivera, is a state prisoner currently incarcerated at the Garden State Youth Correctional Facility in Yardville, New Jersey. He is proceeding *pro se* with an amended civil rights complaint filed pursuant to 42 U.S.C. § 1983. Presently pending before this Court is defendant Sergeant C. Zweigle's motion for summary judgment. For the following reasons, the motion for summary judgment will be granted.

**I.     LEGAL STANDARD ON MOTION FOR SUMMARY JUDGMENT**

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23

(1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

If the moving party meets its threshold burden, the opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *See Anderson,* 477 U.S. at 248; *see also* FED. R. CIV. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation,* 912 F.2d 654, 657 (3d Cir. 1990); *see also Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.,* 470 F.3d 535, 538 (3d Cir. 2006) ("To prevail on a motion for summary judgment, the nonmoving party needs to show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial.").

If a party fails to address the other party's properly supported assertion of fact, the court may consider "grant[ing] summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e). Local Civil Rule 56.1(a) deems a movant's statement of material facts undisputed where a party does not respond or file a counterstatement. L. Civ. R. 56(a). A failure to dispute a party's statement of material facts, however, "is not alone a sufficient basis for the entry of a summary judgment." *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review,* 922 F.2d 168, 175 (3d Cir. 1990) (holding that even where a local rule deeming unopposed motions to be conceded, the court was still required to analyze the movant's summary judgment motion under the standard prescribed by Fed. R. Civ. P. 56(e)); *see also Muskett v. Certegy Check Servs., Inc.,* Civ. No. 08-

3975, 2010 WL 2710555 (D.N.J. July 6, 2010) ("In order to grant Defendant's unopposed motion for summary judgment, where, as here, 'the moving party does not have the burden of proof on the relevant issues, . . . the [Court] must determine that the deficiencies in [Plaintiff's] evidence designated in or in connection with the motion entitle the [Defendants] to judgment as a matter of law.'" (quoting *Anchorage Assocs.*, 922 F.2d at 175)). As always, however, I will construe a *pro se* litigant's pleadings and contentions liberally. *See generally Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009) (citing *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972); *Gibbs v. Roman*, 116 F.3d 83, 86 n. 6 (3d Cir. 1997)).

## II.   BACKGROUND

The amended complaint arises from an incident between Mr. Rivera and Zweigle that occurred in January, 2012. In his amended complaint, plaintiff named three defendants: (1) Sergeant Charles Zweigle – Police Officer Stanhope Police Department; (2) Lieutenant P. Zabita – Police Officer Byram Township Police Department; and (3) the Byram Township Police Department.

The amended complaint asserted that Rivera was pulled over by Zweigle on January 26, 2012. Zweigle told him that he was looking for three black males in a black vehicle and had seen Mr. Rivera talking to someone in his vehicle. Mr. Rivera stated in his complaint that he is a light skinned Hispanic and that he drives a light blue car. Mr. Rivera alleges that Zabita made racial jokes and comments about his race and threatened him with deportation. The complaint sought monetary damages from the defendants on claims of racial profiling, illegal search and seizure, false imprisonment and defamation.

In December, 2014, this Court screened the amended complaint pursuant to 28 U.S.C. § 1915A. Section 1915A(b)(1) permits this Court to dismiss all or part of a complaint that fails to state a claim upon which relief may be granted. Mr. Rivera's federal claims against Zabita and the Byram Township Police Department were dismissed and this Court declined to exercise supplemental jurisdiction over Mr. Rivera's state law claims against those two defendants. With respect to Zweigle, this Court dismissed Mr. Rivera's racial profiling and defamation claims. However, this Court permitted Mr. Rivera's claims of (a) illegal stop and search, and (b) false imprisonment.

On those two remaining claims, Zweigle has now filed a motion for summary judgment. Mr. Rivera has not filed a response in opposition to the motion for summary judgment. Zweigle's statement of material facts is therefore undisputed, and I summarize it here, with the understanding that it does not automatically entitle Zweigle to summary judgment if review of the record nevertheless discloses genuine, material issue of fact. *See* p. 2, *supra*.

On the night of the vehicle stop, Zweigle was informed by dispatch that there had been an armed robbery at an Exxon station on Route 206. (*See* Dkt. No. 39-3 at p.83) Zweigle arrived at the gas station shortly after the robbery had taken place and spoke to the gas station attendant. (*See* Dkt. No. 39-2 at p.3) The gas station attendant told Zweigle that the perpetrators were three black males, that they had displayed a knife, and that they headed onto Route 206 South in a black car with New York plates. (*See* Dkt. No. 39-3 at p.83) The gas station attendant did not require medical attention; Zweigle drove off in search of the robbers. (*See* Dkt. No. 39-2 at p.4)

Zweigle drove down Route 206 South. At the top of the on-ramp to Route 80 East he saw two vehicles. (*See* Dkt. No. 39-3 at p.83) One was in the left lane, and appeared to be speeding; the other was in the right lane and appeared to be doing the speed limit. (*See* Dkt. No. 39-3 at

p.83) The slower vehicle was a dark colored sedan with a New York registration. (*See id.*) Zweigle pulled up next to the slower, dark colored vehicle with his lights and siren activated. (*See* Dkt. No. 39-2 at p.4) The driver (later identified as Mr. Rivera) looked straight ahead and ignored Zweigle. (*See id.*) Rivera appeared to be speaking to someone, although Zweigle could not see anyone else in the car. (*See id.*)

Zweigle then dropped back behind Rivera's car to pull it over. Zweigle based his decision on the following facts: the vehicle fit the description of a dark vehicle with New York license plates, it was close proximity to the scene of the robbery, and the driver appeared to be willfully ignoring Zweigle's patrol car with flashing lights directly alongside his vehicle. (*See id.* at p.4-5)

Upon pulling the car over, Zweigle saw two other passengers who he believed must have been ducking down to hide their presence in the car. (*See id.* at p.5) Zweigle saw cash and two kitchen knives in plain view inside the car. (*See id.*) All three passengers were removed from the vehicle and Zweigle obtained the consent to search the vehicle, which was a blue Nissan. (*See id.*) The search of the vehicle yielded cash, knives and a black pull over mask. (*See id.* at p.6) The three occupants of the vehicle were then arrested. (*See* Dkt. No. 39-3 at p.84)

Mr. Rivera challenged Zweigle's stop of his vehicle in his state criminal proceedings by filing a motion to suppress. A suppression hearing was then conducted. Mr. Rivera's motion to suppress was denied by the state court which explained as follows:

> Mr. Rivera has moved for an order seeking to suppress evidence and statements that the State obtained as a result of the search and search of the defendant on the late evening of January 23, -- January 25, 2012.
>
> As we know from relevant constitutional criminal procedure, in order for this law enforcement officer to proceed in the manner here, the police must have an articulable, reasonable basis to suspect criminal activity by the individual in question.

The particularized suspicion has to be based upon an objective observation that the person stopped has been engaging in criminal wrongdoing.

And the Court has to examine the officer's objective observations and then make a determination as to whether the evidence through those observations raises a suspicion that a particular individual being stopped is engaged in wrongdoing. The stop has to be temporary, no longer than necessary to effectuate the purpose of the initial stop.

The police must use the least intrusive means reasonably available to verify or dispel an officer's suspicion over a short – in a short period of time.

And that requires an examination of the particular facts and circumstances of the case, such as proximity of the stop in time and place to the crime in question, as to whether the police therefore had a reasonable and articulable suspicion.

As the evidence is presented to the Court by the video, the DVD that the Court has observed, which is what Sergeant Zweigle utilized in his patrol vehicle on this particular late evening, this was a very fast happening event. You know, the call coming in from dispatch to the Sergeant, the Sergeant being in close proximity to the area where the call centered around, the Exxon station on Route 206 in – the southern area of Byram Township. He immediately pulled in, and we can discern from that DVD that we have witnesses here, the attendant was there, yelled out the vehicle had taken off, it was three black individuals. And the officer almost spontaneously responding to hearing that information pulled out and headed for Route 80, which was the indication of the direction in which the vehicle was traveling.

The officer was able to make the initial observation of a vehicle in the right hand lane of travel on Route 80, that he testified was doing the speed limit for that vicinity. And there was a vehicle beyond that, farther eastbound, I guess, that all he could see was taillights.

And so, he pulled up to this vehicle that was on the right hand lane, was matching speed with the vehicle. It's critical to note the officer's siren was on, his overhead lights were activated. He looked at the operator, even – he said he had his window down, so he could get a better view. And he observed this individual operator not making any contact with him. But, as he observe,

6

engaging in making conversation and not seeing anyone else in the vehicle, at this particular point in time.

So he pulls back, slows down, pulls behind the vehicle and it pulled over shortly thereafter. And he approached the vehicle cautiously, with his hand on his holster – revolve – his hand on his firearm in its holster. And indicated the occupant should put his hands in a position where they could be observed.

And he testifies that, as a result of this, he was able then to make the observations of two other individuals that were in the vehicle, crouched down, so that one observing that vehicle as it was proceeding would not be able to see that there were other occupants of the vehicle than the driver.

And – in making this observation another police officer, I believe from Mt. Olive Township had arrived, almost simultaneously with the stop of the vehicle by Sergeant Zweigle. And the investigation continued from that point.

So the question is, in terms of the initial call coming into dispatch, what the attendant tells the Sergeant about a – a black vehicle with three black males having just left the station.

And the officer in – in pursuit, in hot pursuit if you will – and then coming upon this dark colored vehicle, and I believe the attendant did indicate very quickly, as there was this brief encounter between the officer and the attendant, that the vehicle had New York plates. He comes upon this dark colored vehicle with New York plates and sees the operator, whom he initially believes to be an individual with black skin. He's now testified in observing the photo and observing Mr. Rivera that his skin is brown.

But in any event, he sees him talking to no one in particular. He finds that to be extremely odd. And he bases that upon his years of experience, most of which I believe he testified is in terms of the night shift, over the course of his career. And given those circumstances and those objective facts, he believes that these are the individuals who were – that this individual and others were the persons engaged in this robbery incident at the Exxon station.

And, of course, in pulling over the vehicle and approaching the vehicle, he makes the observations of the other two individuals in the vehicle, whose photographs have been marked into evidence, similar complexion and appearance, the Court notes by reason of the photos of the other individuals, to that of the defendant.

7

> In the Court's judgment, these facts support a finding that this officer indeed had an articulable and reasonable suspicion to justify this stop of this vehicle. The vehicle was a dark blue, as I observed the vehicle. Not only in the photographs but even the DVD that I observed, when the officer's headlights were on the vehicle you could see that it was a dark blue vehicle. It certainly was a dark colored vehicle. And – it is to be noted, as well, it had the New York plates. We know about the number of occupants now, based upon the observation.
>
> I think what's critical here is what the officer testified to that was so unusual to him. An individual operator with no headset on, who was engaging in what appeared to be conversation with no one in particular.
>
> And the officer being aware of the call coming in of three individuals, and one of whom is observed, but clearly the officer had the right to draw inferences, from this set of circumstances based upon his experience, that the others may well have been in the vehicle, as indeed they were.
>
> So the court will deny the motion for the reasons stated.

(Dkt. No. 39-3 at p.217-23)

After the state court denied the motion, Mr. Rivera pled guilty to armed robbery and was sentenced to twelve years' imprisonment. (*See* Dkt. No. 39-2 at p.6)

### III.  DISCUSSION

The only claims remaining in this case are Mr. Rivera's unlawful stop and false imprisonment claims against Zweigle. Accordingly, this Court need not engage in an analysis of Zweigle's arguments that he is entitled to summary judgment on Mr. Rivera's equal protection claim, which never made it past this Court's § 1915A screening.

A. *Heck v. Humphrey*

Zweigle argues in part that Mr. Rivera's remaining claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). I recently summarized the *Heck* doctrine as follows:

> Under the *Heck* doctrine, no civil claim that attacks the basis of a criminal conviction can be brought unless and until the conviction itself is successfully attacked. A convicted defendant cannot, for example, sue the government witnesses on the theory that they lied, or sue the police for seizing the evidence on which the conviction was based. Thus *Heck* has often been applied to cut off claims of persons who seek, in effect, to relitigate the merits of currently valid convictions via a civil suit challenging the legality of, *e.g.*, a search. *See, e.g., Crawford v. Frimel*, 337 F. App'x 211, 213 (3d Cir. 2009) (per curiam) (applying *Heck* bar to Fourth Amendment claim as success would imply the invalidity of his conviction); *Hinton v. White*, No. 10-3902, 2012 WL 6089476, at *3 (D.N.J. Dec. 6, 2012) (applying *Heck* bar to illegal search and seizure claim that would call into question state criminal conviction) (citations omitted).

*Pittman v. Metuchen Police Dep't*, No. 12-2044, 2016 WL 1122671, at *5 (D.N.J. Mar. 22, 2016). "[A] false arrest or false imprisonment claim may be maintained without showing a favorable determination, but only if it does not 'necessarily implicate the validity of a conviction or sentence.'" *Mosby v. O'Brie*, 532 F. App'x 84, 86 (3d Cir. 2013) (quoting *Montgomery v. De Simone*, 159 F.3d 120, 126 n.5 (3d Cir. 1998)) (additional citation omitted). Indeed, as one court has noted, *"Heck* does not bar a claim where a plaintiff seeks damages for the defendant's use of improper procedures, so long as the validity of a plaintiff's conviction is not called into question." *Rosembert v. Borough of East Landsdowne*, 14 F. Supp. 3d 631, 640 (E.D. Pa. 2014) (citing *McBride v. Cahoone*, 820 F. Supp. 2d 623, 632 (E.D. Pa. 2011). Nevertheless, if a successful claim "could result in the suppression of essential evidence discovered . . . it necessarily calls into question the validity of the conviction." *Short v. Chief Shawn Payne & Officer Parker*, No. 15-5873, 2016 WL 1594791, at *3 (E.D. Pa. Apr. 20, 2016) (citation omitted).

In this case, absent a showing that Zweigle had reasonable suspicion to pull over Mr. Rivera's car, the evidence tying him to the robbery found in his vehicle, such as the cash, knives and mask, would have been suppressed. But they were not suppressed; suppression was denied,

9

after fact finding, by the State court in the criminal case. That Court found that the stop was not unlawful, and based on the record both in that court and here, I agree. Success on Mr. Rivera's unlawful stop and search claim would necessarily implicate the validity of his armed robbery conviction. Technically, a person might be seized without probable cause, and yet be validly convicted later on. For this reason, a false imprisonment claim does not always fall under the *Heck* doctrine. Here, however, it does. The chief physical evidence fell into the officer's hands at the time of, and as a result of, the stop and arrest. Thus I find that the false imprisonment claim, too, would implicate the validity of the armed robbery conviction, and is barred by *Heck*. *See, e.g., Short*, 2016 WL 1594791, at *4 ("Because Short pled guilty, a finding that he was arrested without probable cause would likely result in the suppression of evidence which ultimately led to the issuance of his arrest warrant, and therefore necessarily imply the invalidity of his conviction."); *Rosenbert*, 14 F. Supp. 3d at 641 ("As Plaintiff pleaded guilty to driving under the influence of alcohol, a finding that he was searched or arrested without probable cause, which would likely result in the suppression of his blood alcohol level, would necessarily imply the invalidity of the conviction.").

B. *Reasonable Suspicion/Probable Cause*

Even if Mr. Rivera's claims were not barred by *Heck*, Zweigle would be entitled to summary judgment, because at the time he stopped Rivera's vehicle, he had reasonable suspicion, which quickly developed into probable cause for arrest.

> Law enforcement officers may make an investigative stop of a vehicle upon "reasonable suspicion" of wrongdoing. *United States v. Hensley*, 469 U.S. 221, 226, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985). Following a valid traffic stop, "[p]olice have probable cause to arrest if the circumstances are sufficient to cause a prudent person to believe that a crime has been committed and the person to be arrested committed it." *United States v. Stubbs*, 281 F.3d 109, 122 (3d Cir. 2002) . . . . Probable cause and reasonable suspicion

10

> are both to be evaluated based upon the "totality of the circumstances." *United States v. Arvizu,* 534 U.S. 266, 275, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002); *Illinois v. Gates,* 462 U.S. 213, 230–31, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). Officers are permitted to draw from "their own experience and specialized training to make inferences from and deductions about the cumulative information available." *Arvizu,* 534 U.S. at 273, 122 S. Ct. 744.

*United States v. Elmore,* 548 F. App'x 832, 836 (3d Cir. 2013). Reasonable suspicion is less demanding than probable cause to arrest; for an investigatory stop, an officer need only have "an articulable basis for believing that the stoppee has engaged in criminal activity." *United States v. Jones,* 506 F. App'x 128, 131 (3d Cir. 2012) (citing *United States v. Delfin-Colina,* 464 F.3d 392, 396 (3d Cir. 2006)).

In this case, Zweigle was told by the gas station attendant shortly after the armed robbery that three black men had committed the robbery, had displayed a knife, and had departed in a dark vehicle with New York plates onto Route 206 South. Shortly thereafter, Zweigle pulled next to a dark colored vehicle with New York plates with his siren and lights on. The driver did not respond, but seemed to be talking to someone in the car whom Zweigle could not see. That was a sufficient reasonable-suspicion basis for a brief investigatory car stop. The complaint alleges that Mr. Rivera's car is blue, and that he is actually somewhat light-skinned and Hispanic, not African-American. The state court found, however, that the car was dark blue, and the stop took place at night based on the officer's view inside a traveling automobile. These details, which in any event are not supported by evidence or an affidavit, do not detract from reasonable suspicion. Accordingly, Zweigle is entitled to summary judgment on Mr. Rivera's unlawful stop claim.

To the extent that Mr. Rivera is also asserting an unlawful search claim, there is no dispute of material fact in the record that Zweigle saw the cash and knife in plain sight, and that in any event Rivera consented to the search of his vehicle.

Zweigle is also entitled to summary judgment on plaintiff's false imprisonment claim. False imprisonment requires a plaintiff to show that he was (1) arrested or detained against his will (2) without proper legal authority or justification.[1] *See Leang v. Jersey City Bd. of Educ.*, 198 N.J. 557, 591, 969 A.2d 1097 (2009). As indicated above, Zweigle had proper justification for the investigatory stop because he had reasonable suspicion. To the extent Rivera may be alleging that the car stop itself constituted false imprisonment, that claim must fail.

Mr. Rivera may also be asserting that his subsequent arrest, or his later detention up to the time of being charged, constituted false imprisonment. Probable cause for arrest is an absolute defense to the tort of false imprisonment. *See D'Arrigo v. Glaucester City*, No. 04–5967, 2007 WL 1755970, at *8 n.12 (D.N.J. June 19, 2007) (citing *Wildoner v. Borough of Ramsey*, 162 N.J. 375, 744 A.2d 1146 (2000)).

For the reasons stated above, Zweigle indisputably developed probable cause to arrest very soon after pulling over the car. The dark car, the three occupants, Rivera's behavior, the knife and mask, and the cash would justify a reasonable officer in believing that Rivera was involved in the recent robbery.

A claim based on any later detention shares the additional infirmity of being bound up with the criminal charges and guilty plea. The Third Circuit has recognized that "a guilty plea—even one for a lesser offense—does not permit a later assertion of no probable cause." *Walker v.*

---

[1] There does not appear to be any meaningful distinction between a common law and a § 1983 claim for false imprisonment. *See Grandizio v. Smith*, No. 14-4868, 2015 WL 58403, at *4 n.2 (D.N.J. Jan. 5, 2015) (citing *Wildoner v. Borough of Ramsey*, 162 N.J. 375, 389, 744 A.2d 1146 (2000); *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995)).

*Clearfield Cnty. Dist. Attorney,* 413 F. App'x 481, 483 (3d Cir. 2011) (*citing Donahue v. Gavin,* 280 F.3d 371, 383 (3d Cir. 2002)). Because he pled guilty to armed robbery, and because he makes no showing that the nature or quality of evidence changed after the arrest, any ongoing claim of false imprisonment cannot survive. *See McGann v. Collingswood Police Dep't,* No. 10–3458, 2012 WL 6568397, at *10 & n.11 (D.N.J. Dec. 17, 2012) (finding that plaintiff's false imprisonment claims failed because of plaintiff's guilty plea); *Ferry v. Barry,* No. 12–009, 2012 WL 4339454, at *5 (D.N.J. September 19, 2012) (same). Therefore, Zweigle is entitled to summary judgment on Mr. Rivera's remaining claims for these reasons as well.[2]

## IV. CONCLUSION

For the foregoing reasons, Zweigle's motion for summary judgment will be granted. An appropriate order will be entered.

DATED: September 19, 2016

_____
KEVIN MCNULTY
United States District Judge

---

[2] Because Zweigle is entitled to summary judgment on Mr. Rivera's claims for the reasons discussed above, this Court need not analyze his additional arguments for why he is entitled to summary judgment, such as the *Rooker-Feldman* doctrine or qualified immunity. Additionally, Zweigle argues that Mr. Rivera's state law claims should be dismissed because he failed to file a notice of tort claim. However, in light of this Court's discussion of his unlawful stop/search and false imprisonment claims discussed above, this Court does not find that any state law claims are remaining in this action.